UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |  | |
|---|---|---|---|
| LATONIA ADAMS, | ) | | |
| | ) | | |
| Plaintiff, | ) | Case No. 21-cv-4874 | |
| | ) | | |
| v. | ) | Hon. Steven C. Seeger | |
| | ) | | |
| HOSTESS BRANDS, LLC, | ) | | |
| | ) | | |
| Defendant. | ) | | |
| | ) | | |

**MEMORANDUM OPINION AND ORDER**

Latonia Adams, an African-American woman, spent six months working for Hostess Brands at a bakery in Chicago. She suffered various kinds of discrimination based on her race, and she raised the issue with her employer and the union. But her complaints went nowhere. The union elected not to pursue arbitration.

Adams did not pursue arbitration on her own. Instead, she went straight to the federal courthouse. The lawsuit, however, skipped a step and jumped the gun. The collective bargaining agreement requires an employee to exhaust all of her options under the grievance procedure before filing suit. Adams could have pursued arbitration without the union, but she didn't. The failure to exhaust her remedies means that the lawsuit is premature.

Hostess moved to dismiss for improper venue. For the reasons stated below, the motion to dismiss is granted.

Background

At the motion to dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast

the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

Plaintiff Latonia Adams is an African-American woman. *See* Cplt., at ¶ 8(a) (Dckt. No. 1). She worked at Defendant Hostess Brands, LLC from March through September 2019. *Id.* at ¶ 8(b). She was a packer and then a machine operator. *Id.* at ¶ 10.

Adams alleges that she endured race discrimination in several different ways, under two different supervisors. One supervisor required her to perform more work, and more difficult work, than her non-black colleagues. *Id.* at ¶ 12(a). That supervisor falsely accused her of eating candy while on the line, and accused her of failing to inspect the pastries. *Id.* at ¶ 12(b)–(c). He didn't allow her to talk to co-workers, unlike her non-black co-workers. *Id.* at ¶ 12(d). And Adams was passed over for promotions, too. *Id.* at ¶¶ 13–14.

Adams changed supervisors, but the mistreatment continued. The new supervisor deprived Adams of training necessary to perform her job. *Id.* at ¶ 18. Her new manager spoke in Spanish to her co-workers, which Adams couldn't speak. *Id.* at ¶ 19. The new manager also told Adams in her evaluation that other employees were afraid of her, even though she has never had a confrontation with a co-worker. *Id.* at ¶¶ 20–21.

Adams went to Human Resources a few times to complain about her mistreatment. *Id.* at ¶¶ 15, 23. But nothing changed. *Id.* at ¶ 24.

Adams responded by suing Hostess. She brings two race discrimination claims. Count I is under section 1981, and Count II is under Title VII. *Id.* at Counts I–II.

Hostess moves to dismiss for lack of venue. *See* Def.'s Mtn. to Dismiss (Dckt. No. 9). The gist of the argument is that Adams failed to comply with the grievance procedure of the collective bargaining agreement, which requires arbitration.

2

**Legal Standard**

"[A] motion to dismiss based on a contractual arbitration clause is appropriately 'conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3).'" *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 807 (7th Cir. 2011) (quoting *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007)); *see* Fed. R. Civ. P. 12(b)(3).

"When a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper." *Johnson v. Creighton Univ.*, 114 F. Supp. 3d 688, 696 (N.D. Ill. 2015); *see also RAH Color Techs., LLC v. Quad/Graphics, Inc.*, 2018 WL 439210, at *1 (N.D. Ill. 2018); *Soucy v. Cap. Mgmt. Servs., L.P.*, 2015 WL 404632, at *5 (N.D. Ill. 2015). The burden, however, "is low because courts resolve conflicts in the plaintiff's favor." *RAH Color Techs.*, 2018 WL 439210, at *1 (collecting cases).

A district court does not need to stay within the four corners of a complaint when considering a challenge to venue. "When one party makes a bald claim of venue and the other party contradicts it, a district court may look beyond the pleadings to determine whether the chosen venue is appropriate." *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809–10 (7th Cir. 2016); *see also Faulkenberg*, 637 F.3d at 809–10. That said, a district court "generally accepts the plaintiff's allegations as true for purposes of the motion to dismiss, so long as the complaint contains sufficient factual allegations to state a claim for relief that is legally sound and plausible on its face." *See Deb*, 832 F.3d at 810; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**Analysis**

Hostess moves to dismiss for improper venue based on the terms of the collective bargaining agreement. Hostess contends that the CBA requires employees to raise disputes

3

through a grievance procedure, which includes mandatory arbitration. As Hostess sees it, this dispute belongs in arbitration, not the federal courthouse, as contemplated by the collective bargaining agreement. The Court agrees.

"[A] collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate . . . claims is enforceable as a matter of federal law." *14 Penn Plaza LLC v. Pyet*, 556 U.S. 247, 274 (2009). The agreement must "explicitly state[] that an employee must resolve his statutory as well as his contractual rights through the grievance procedure delineated in the collective bargaining agreement." *Vega v. New Forest Home Cemetery, LLC*, 856 F.3d 1130, 1134 (7th Cir. 2017). "It is neither unattainable nor unreasonable to expect parties to a collective bargaining agreement to clearly state those statutory claims that they intend to confine to arbitration." *Cloutier v. GoJet Airlines, LLC*, 996 F.3d 426, 437 (7th Cir. 2021).

A collective bargaining agreement that requires arbitration of statutory claims must describe the covered claims with specificity. For example, in *14 Penn Plaza*, the Supreme Court addressed a collective bargaining agreement that required union members to submit all claims of employment discrimination to binding arbitration under the CBA's grievance and dispute resolution procedures. The provision covered discrimination based on race and other categories "protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act . . . or any other similar laws, rules or regulations." *Id.* at 252.

The Supreme Court confirmed that such arbitration provisions are enforceable, even though they may limit a statutory right to bring a discrimination claim in federal court. "This Court has required only that an agreement to arbitrate statutory antidiscrimination claims be 'explicitly stated' in the collective-bargaining agreement." *Id.* at 258 (quoting *Wright v.*

4

*Universal Mar. Serv. Corp.*, 525 U.S. 70, 80 (1998)). That agreement "clearly and unmistakably" required arbitration of the antidiscrimination claims, so it was enforceable. *Id.* at 260. "Congress has chosen to allow arbitration of ADEA claims. The Judiciary must respect that choice." *Id.*

The Seventh Circuit encountered an agreement on the other end of the spectrum in *Cloutier*. There, the collective bargaining agreement required arbitration of "dispute[s] between the parties arising under the terms of this Agreement." *Id.* at 437. Another provision – several sections away – required "family and medical leaves in accordance with applicable law." *Id.* at 436.

The Seventh Circuit held that the arbitration provision did not cover FMLA claims. The fact that another provision of the CBA required family and medical leave was not enough to bring FMLA claims within the scope of the arbitration provision. "The parties could have easily written Section 15 to say something akin to 'Any FMLA claims must be brought pursuant to the grievance procedure as described in Sections 24 and 25.' They did not, and we will not now read Section 15 to say so." *Id.* at 437; *see also Wright*, 525 U.S. at 80 (holding that a collective bargaining agreement did not cover ADA claims because the "arbitration clause is very general, providing for arbitration of '[m]atters under dispute'") (modification in original).

Here, Hostess and the union entered into a collective bargaining agreement that includes a provision about workplace disputes. The agreement provides that the grievance and arbitration procedure is the only show in town when it comes to resolving disputes. "Grievances involving claims [from] this Article shall be filed and shall be resolved exclusively by the grievance and arbitration procedure . . . ." *See* Collective Bargaining Agreement, at § 6.1(a) (Dckt. No. 10-1, at 9 of 12).

5

An employee must take full advantage of the grievance procedures before filing suit in court. "No employee may institute an action in any court or bring a procedure before any Administrative Agency unless said employee has exhausted all procedures within the grievance procedure, except filing with the NLRB." *Id.*

The collective bargaining agreement includes an expansive definition of the term "grievance." *Id.* It includes any contractual dispute about the terms of the agreement, but it also covers statutory claims. *Id.* "A grievance also includes any claim under state, local or federal substantive law, *including but not limited to* claims of wrongful or unlawful discharge, claims of harassment, retaliation, claims of unlawful treatment based upon any one or combination of factors prohibited by applicable state, local or federal law, *including but not limited to* claims" that fall within a long laundry list of statutes. *Id.* (emphasis added).

The ensuing list of statutes is quite extensive, spanning 14 lines of text (roughly two-thirds of a page). The list expressly includes claims under Title VII and other antidiscrimination statutes. *Id.* For good measure, it also covers "similar such claims under federal, state and/or local law." *Id.*

The collective bargaining agreement clearly and unmistakably covers antidiscrimination claims. The list of covered claims expressly includes Title VII, meaning the statute involved in Count II of the complaint at hand. That's about as clear and unmistakable as it gets.

The list of statutes is long, but it doesn't name every statute under the sun. The list does not expressly mention section 1981.

The parties do not give much attention to whether the provision covers claims under section 1981. Hostess makes a cursory argument that section 1981 is covered, citing only one

6

Central District of Illinois case. *See* Def.'s Mem., at 4–5 (Dckt. No. 10). Adams does not respond. *See* Pl.'s Resp. (Dckt. No. 13).

The Court concludes that the grievance provision covers claims under section 1981, for a few reasons.

First, the agreement's list of covered claims is nonexclusive. The list begins with "including but not limited to." *Id.* In fact, that phrase appears twice, to double down on inclusiveness. Both parts of that phrase suggest that the list is not exhaustive. The "word *include* does not ordinarily introduce an exhaustive list." *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 132 (2012) (emphasis in original); *see also id.* at 226 ("When a definitional section says that a word 'includes' certain things, that is usually taken to mean that it may include other things as well."). And "not limited to" means what it says – the covered claims are "not limited to" the statutes in the list. In short, the list is not exhaustive, so a failure to identify section 1981 by name does not mean that it falls outside the reach of the provision.

Second, the agreement expressly covers "similar such claims under federal, state, and/or local law." *Id.* There is no question that a claim under section 1981 is similar to a claim under Title VII. In fact, courts apply identical *prima facie* requirements for a race discrimination claim under section 1981 and a race discrimination claim under Title VII. *See, e.g.*, *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 403–04 (7th Cir. 2007) (collecting cases). The two statutes afford the same remedies, too. Substantively, the two statutes are not just "similar" – for all intents and purposes, they're a match.

7

The overlap means that claims under section 1981 fall within the reach of the provision. The provision covers claims under Title VII and "similar" claims. A claim under section 1981 is similar to a claim under Title VII. So, it's covered.

Third, the agreement exempts certain federal laws, such as "any controversy arising under the National Labor Relations Act, as amended." *Id.* The company and the union knew how to exclude certain statutes from the reach of the arbitration provision. And here, there is no hint that the parties excluded claims under section 1981.

Overall, the text of the agreement "clearly and unmistakably" covers claims under Title VII and, by extension, section 1981. *See 14 Penn Plaza LLC*, 556 U.S. at 274. As a result, Adams had an obligation under the collective bargaining agreement to follow the grievance procedure. *See* Collective Bargaining Agreement (Dckt. No. 10-1, at 9 of 12).

That procedure required Adams to take three steps. First, the union and supervisor must attempt to resolve the dispute. *Id.* at 10 of 12. Second, if they are unable to resolve the issue, the union must write to the employer's representative within 10 days. *Id.* Third, within five days of the written grievance, the union and the employer must meet to discuss the grievance. *Id.*

At that point, if the grievance remains unresolved, the grievance "may be submitted to an arbitrator whose decision shall be final and binding on the Union, the employee(s), and the Employer." *Id.* If an employee wishes to arbitrate, the employee or the union must make the demand within 15 days after the receipt of the decision made from the union-employer meeting. *Id.* The collective bargaining agreement then drills down on the arbitration procedure, including the names of the arbitrators, the filing fees, the timeline, and so on. *Id.* at 11–12 of 12.

The collective bargaining agreement imposes a blockade, preventing an employee from going to the courthouse without trying to resolve the dispute through the grievance procedure.

8

"No employee may institute an action in any court or bring a procedure before any Administrative Agency unless said employee has exhausted all procedures within the grievance procedure . . . ." *Id.* at 9–10.

Notice the key word: "all" procedures. *Id.* An employee must exhaust "all" procedures within the grievance procedure framework. And the phrase "grievance procedure" harkens back to the title of Article VI as a whole – "GRIEVANCE PROCEDURE" – which expressly covers submitting grievances and heading to arbitration.

Adams contends that she did, in fact, exhaust those procedures, and she submits a declaration to back up her position. *See* Adams Dec. (Dckt. No. 13-1). The declaration summarized her efforts to raise her discrimination claim – first with the state agency, and then with the union itself.

In late August 2019, Adams brought her case to the Illinois Department of Human Rights, but the intake officer told her to go through the grievance procedure first. *Id.* at ¶¶ 3–4. Adams provided the union with a written grievance "[i]n the next day or two," which was then filed with the company. *Id.* at ¶¶ 6–7. The union had a grievance meeting, which was unresolved. *Id.* at ¶¶ 6–8. And the company and union decided not to proceed to arbitration. *Id.* at ¶ 8.

In her declaration, Adams expressed the view that the union holds the reins on whether to go forward with arbitration. And the employee is stuck with the union's decision, like it or not. "Pursuant to the collective bargaining agreement, an individual covered by the collective bargaining agreement cannot decide to arbitrate a grievance – such decision is exclusively in the control of the union and the company." *Id.* at ¶ 9.

As Adams tells it, she exhausted her internal remedies when the union decided not to arbitrate her claims. *Id.* at ¶ 10. At that point, she hit a dead end when it came to arbitration, so she returned to the IDHR and filed a charge of discrimination. *Id.* at ¶ 11; *see also* Charge of Discrimination (Dckt. No. 13-2).

Adams did take a number of steps to raise her claims with the company and the union. And she did make efforts to arbitrate her claims, until the union decided not to get on board. Even so, the union's decision not to arbitrate did not impose an immovable roadblock. Adams could have pursued arbitration without the union.

The collective bargaining agreement expressly covers this very situation. The CBA addresses what an employee should do if she "desires to proceed and the Union declines." *See* Collective Bargaining Agreement (Dckt. No. 10-1, at 11 of 12). "In the event the employee desires to proceed and the Union declines, the employee will execute a waiver and the costs of the Arbitration will be born entirely by the Employer." *Id.*

The collective bargaining agreement allows an employee to pursue arbitration, even without the support of the union. And it explains how to do it. The employee simply needs to sign a waiver. And in that case, the employee does not have to pay anything. The arbitration will get paid on the company's dime.

Adams could have pursued arbitration without the union, but she didn't. The failure to arbitrate means that Adams did not "exhaust[] all procedures within the grievance procedure . . . ." *Id.* at 9–10. And the failure to exhaust means that she cannot come to the federal courthouse.

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss is granted.

Date: August 1, 2022

_____

Steven C. Seeger
United States District Judge

11